# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR-17-68-GF-BMM** |
| Plaintiff, | |
| vs. | |
| | **AMENDED ORDER** |
| BRANDON CORDELL BENNETT, | |
| Defendant. | |

Defendant Brandon Cordell Bennett moves this Court to suppress evidence obtained from his cell phone pursuant to a search warrant issued by a Montana state district court judge. (Doc. 141.) Bennett also filed a Motion for a Bill of Particulars (Doc. 145) and a Motion for Pretrial Judgement of Acquittal (Doc. 168). The Court conducted a hearing on the instant motions on April 8, 2019. (Doc. 174.)

## BACKGROUND

The Great Falls Police Department ("GFPD") arrested Bennett on October 13, 2015, in response to an allegation that Bennett had sexually abused his step daughter, Jane Doe. (Doc. 143-2.) Bennett was arrested at his place of employment—O'Reilly Auto Parts. (Doc. 142-3 at 2.) Officer Jeremy Parks was

instructed to check the O'Reilly Auto Parts' parking lot for Bennett's vehicle to see whether Bennett's cell phone was located inside the vehicle. *Id.* Officer Parks observed a cell phone located on the passenger seat. *Id.* Officer Parks requested that S&C Auto, Inc. tow Bennett's vehicle to the GFPD. *Id.* Officer Parks sealed Bennett's vehicle with evidence tape. *Id.*

GFPD assigned Detective Adam Price to follow up on the initial investigation into Doe's allegation against Bennett on the date of Bennett's arrest. (Doc. 143-5 at 1.) Cascade County Deputy County Attorney Josh Racki informed Detective Price "that there was not enough probable cause to seize and/or search [Bennett's] phone." (Doc. 143-5 at 3.) GFPD eventually arranged to have Bennett's vehicle towed back to his residence that he shared with D.D., Doe's mother. *Id.*

The State of Montana charged Bennett by Information in the Eighth Judicial District, Cascade County, with Incest, a felony, in violation of Montana Code Annotated § 45-5-507, on October 20, 2015. (Docs. 143-2, 142-6 at 1.) The case proceeded to trial. A jury found Bennett not guilty of this offense on August 10, 2016. (Doc. 143-8 at 8-9.)

Robin Castle, Doe's counselor, contacted Detective Price on August 23, 2016. (Doc. 143-1 at 4.) Doe had been seeing Castle since November of 2015, following her earlier disclosure of sexual abuse by Bennett. (Doc. 173-1 at 24.)

Doe had confided in Castle that Bennett "had taken photos of [Doe] naked with his cell phone while making her pose in certain positions." *Id*. Castle informed Detective Price that D.D., currently was at Castle's office. *Id*. Castle reported that D.D. was in possession of Bennett's cell phone. *Id*. D.D. provided Detective Price with Bennett's cell phone at Castle's office. *Id*.

Detective Scott conducted a forensic interview with Doe on August 24, 2016. (Docs. 143-1 at 4, 144, Exhibit Q.) Doe disclosed, in relevant part, that Bennett had taken photos of Doe "down there" and of her upper body. *Id*. Doe explained that Bennett had taken photos of Doe while he was touching her. *Id*. Bennett allegedly made Doe spread her legs and make them go up while she was laying on her back. *Id*. *Doe* repeated that Bennett had used his cell phone to take the photos of her. *Id*.

Detective Price applied for a warrant to search Bennett's cell phone on August 31, 2016. (Doc. 142-2.) Detective Price attested to the following in his affidavit in support of the search warrant:

> On August 23, 2016, GFPD Detective Price received a call from child counselor Robin Castle. Castle had been seeing 9 year old Jane Doe in relation to sexual abuse by her step-father, Brandon Bennett. Castle informed Price that Doe had disclosed that Bennett had taken pictures of Doe naked with his cell phone while making her pose in certain positions. Castle informed Doe's mother and Doe's mother brought the cell phone to Castle's office.
>
> Detective Price met with Castle and Doe's mother at Castle's office. Doe's mother informed Detective Price that the phone belonged to Bennett and that

she tried to get into the phone herself to look at it but that she did not know the passcode. Doe's mother provided the phone to Detective Price and a forensic interview was scheduled for Doe.

On August 24, 2016, Detective Noah Scott performed a forensic interview with Doe. Doe disclosed that Bennett "hurt her." Bennett took pictures of Doe "down there" referring to her vaginal area. Bennett also took pictures of her chest. All of these pictures were taken with Bennett's phone. Doe also reported that Bennett touched her in the vaginal and chest area. She stated that he touched under her clothes with his "little willy thingy" and took pictures with his phone while touching her. Doe reported that this all occurred at their house in her mom's room.

Doe disclosed that when Bennett took the pictures he made Doe spread her legs and lift her legs up while she laid on her back. Doe felt scared when this happened and reported that only she and Bennett were in the room while he did this and while he took the pictures.

After this interview, Detective Price spoke with Doe's mother. Doe's mother reported that this was Bennett's only phone and that he had used it for at least a year prior to him being arrested in October 2015. Doe's mother stated that after he was arrested she tried to get into the phone as she was suspected that Bennett looked at child pornography, however she could not access the phone as it was protected by a passcode. (sic).

(Doc. 142-2 at 1-2.) Montana State District Court Judge Greg Pinski issued the

search warrant that same day. *Id*. at 4.

Detective Price extracted data from Bennett's cell phone on September 1,

2016. (Doc. 142 at 12.) Detective Price observed that the extracted data contained

mostly images of child pornography. *Id*. Law enforcement officers obtained a

series of warrants between September 1, 2016 and March of 2017, to search

Bennett's cell phone. *Id*. Law enforcement recovered a total of 1,043 images of

child pornography from Bennett's cell phone. *Id.*

The grand jury indicted Bennett on October 5, 2017, on two counts: Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) (Count I), and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count II). (Doc. 1.) The Government filed a Superseding Indictment on April 4, 2019. (Doc. 164.) The Superseding Indictment alleges the same two counts that had been alleged in the Indictment with one modification—the date of conduct was changed in Count I. *Id.* at 2.

## DISCUSSION

The Court will address first whether Bennett's claim entitles him to a *Franks* hearing. Second, the Court will analyze whether Bennett's *Franks* hearing warrants suppression of evidence from Bennett's cell phone obtained subsequent to a search warrant. Third, the Court will determine whether Bennett's claim warrants dismissal of Count I of the Superseding Indictment.

## I. *Franks* Hearing and Motion to Suppress

Bennett asserts that the omission of facts relating to Doe's credibility, Doe's mother's credibility, a parenting plan that D.D. had filed in state court, and the prior history of Bennett's state case undermines Judge Pinski's determination of probable cause to search Bennett's phone. (Doc. 142 at 15-17.) Bennett's argument requires the Court to address first whether these omissions entitle Bennett to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. The Fourth Amendment likewise permits a defendant to challenge a warrant pursuant to *Franks* when a valid affidavit "contains deliberate or reckless omissions of facts that tend to mislead." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

A defendant proves entitled to a *Franks* hearing if he establishes the following factors:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

*United States v. DiCesare*, 765 F.2d 890, 894-95 (9th Cir. 1985) (citation omitted); see also *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000) ("A defendant is entitled to a *Franks* hearing only if he makes a two-fold showing: intentional or reckless inclusion or omission, and materiality."). Essentially, the defendant must make "a substantial preliminary showing that the affidavit contain[ed] intentionally or recklessly false statements, and . . . [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable

cause." *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (internal quotations and citation omitted).

The Court determined at Bennett's motion hearing that Bennett had made a substantial showing to establish the five *DiCesare* factors. First, Bennett has "alleg[ed] specifically" that Detective Price's affidavit as a whole remains false due to Detective Price's failure to include nine omitted facts. *DiCesare*, 765 F.2d at 894-95. Second, Bennett contends that Detective Price deliberately omitted those facts from his affidavit. Third, though Bennett fails to accompany his allegations with "a detailed offer of proof," Bennett does provide a combination of direct and circumstantial evidence to support his assertions. *DiCesare*, 765 F.2d at 894-95. Fourth, Bennett's assertions challenge the veracity of Detective Price—the detective who has been investigating Bennett's case since October 13, 2015. Finally, the alleged omissions from Detective Price's affidavit prove necessary to the finding of probable cause to search Bennett's cell phone. These facts entitle Bennett to a *Franks* hearing.

Once a defendant earns a *Franks* hearing, his burden of proof changes. A defendant at a *Franks* hearing must prove the following elements by a preponderance of the evidence: "that there was (1) a knowing and intentional falsehood or a reckless disregard for the truth; and (2) that the challenged statement

was essential to the finding of probable cause." *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988).

## A. Intentional or Reckless Omissions

Bennett specifically alleges that the following facts should have been included in Detective Price's affidavit in support of the search warrant application: (1) that a jury acquitted Bennett on a state incest charge that dealt with the same complaining witness two weeks before the Doe's August 23, 2019, disclosure; (2) that Doe never disclosed in any pretrial interviews that Bennett had taken photos of her; rather, Doe denied that Bennett had taken photos of her; (3) that Doe did not report to her counselor before the state trial that Bennett had taken inappropriate photos of her; (4) Doe likewise did not testify at trial that Bennett had taken photos of her; (5) that Doe made her allegations in August of 2016 and that Bennett had been incarcerated since October of 2015; (6) that law enforcement previously lacked probable cause to apply for a warrant to search Bennett's cell phone; (7) that Doe's mother had sought advice from Detective Price on how best to prevent Bennett from having contact with their biological daughter; (8) that Doe's mother previously represented that she did not believe that Bennett was interested in children and only made the representation to law enforcement that she suspected Bennett looked at child pornography after Bennett had been acquitted; and (9) that Doe's mother previously stated that none of her children had reported any sexual

abuse or Bennett having taken inappropriate photos of the children. (Doc. 142 at 15-16.)

"[W]hen the Fourth Amendment demands a factual showing sufficient to compromise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *United States v. Tate*, 524 F.3d 449, 164-65 (4th Cir. 2008) (citation omitted) (emphasis in original). "Truthful" does not require that "every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id*. at 165. "Truthful" does mean that the "information put forth is believed or appropriately accepted by the affiant as true." *Id*. "[A]llegations of negligence or innocent mistake are insufficient." *Id*. at 454 (internal quotes and citation omitted).

A defendant's burden increases when his allegations rely "on an omission, rather than on a false affirmative statement." *Tate*, 524 F.3d at 454. This enhanced burden applies because "an affidavit offered to procure a search warrant cannot be expected to include . . . every piece of information gathered in the course of an investigation." *Id*. at 455 (internal quotations and citation omitted). "[B]ecause every piece of information cannot be expected to be included, the very process of

selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information." *Id*.

"[M]erely showing an intentional omission of a fact from a warrant affidavit does not fulfill *Franks*' requirements." *Id*. To satisfy the intentional or reckless falsity requirement for an omission under *Franks*, the defendant must show that facts were omitted "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *Id*. (citation omitted). In other words, "the omission must be designed to mislead or must be made in reckless disregard of whether [it] would mislead." *Id*. (internal quotations and citation omitted).

GFPD assigned Detective Price to Bennett's case at its inception. (Doc. 143-5 at 1.) Detective Price personally had interviewed D.D. on October 13, 2015. (Doc. 143-5 at 1.) Detective Price had observed Doe's first forensic interview on October 13, 2015. *Id*. D.D. sought Detective Price's advice on "how best to prevent [Bennett] from having contact with his daughter." (Doc. 144, Exhibit H.) D.D. ultimately filed a proposed parenting plan for the daughter that she shared with Bennett on November 12, 2015. (Doc. 143-6.) And the Cascade County Attorney's Office previously had informed Detective Price that he lacked probable cause to search Bennett's cell phone subsequent to Bennett's October 2015 arrest. (Doc. 143-5 at 3.) Detective Price testified at Bennett's state trial. (Doc. 143-8 at 4.)

It proves inconceivable that Detective Price lacked awareness of Bennett's acquittal on his state Felony Incest charge. *See* (Docs. 143-8, 143-1 at 5.) All but one alleged fact—D.D.'s parenting plan—likely were known to Detective Price at the time that he provided the August 31, 2016, affidavit in support of the search warrant application to Judge Pinski. The Court will discuss these omitted facts to determine whether Detective Price intentionally or recklessly omitted these facts in an intent to mislead Judge Pinski.

### 1. Doe's Previous Disclosure

Bennett argues that the search warrant affidavit should have included the fact that Doe never disclosed before trial that Bennett had taken inappropriate photos of her. (Doc. 142 at 15-16.) Doe underwent a forensic interview on October 13, 2015. (Docs. 143-5 at 1, 144 at Exhibit H.) The interviewer asked: "[h]as [Bennett] ever taken photos of you?" (Docs. 155 at 11, 144 at Exhibit H.) Doe responded: "[n]o. I don't know." *Id*. Doe later elaborated stating, "[o]nly with me and Heather." *Id*. The interviewer failed to clarify Doe's ambiguous response. See *id*. Doe's statements nonetheless fail to rise to the level of a categorical denial. It does not appear that Detective Price's omission of Doe's previous response to an ambiguous question was not "designed to mislead" the reviewing judge. *Tate*, 524 F.3d at 455 (citation omitted).

### 2. D.D.'s Previous Statements

Bennett likewise alleges that D.D. never had reported to law enforcement that she suspected Bennett had viewed child pornography before Bennett's state trial. (Doc. 142 at 16.) Bennett further contends that D.D. never had disclosed that her children had reported that Bennett took inappropriate photos of them before Bennett's state trial. *Id.* D.D. had reported to Detective Price in an interview that she believed that Bennett used his cell phone to view pornography. (Doc. 144 at Exhibit H.) D.D. admitted to being "unaware" of whether he had any child pornography on his phone. (Doc. 143-5 at 3.) D.D. admitting that she had been unaware whether Bennett viewed child pornography at her initial interview fails to amount to an inconsistent statement that needed to have been included in Detective Price's affidavit in support of the search warrant. Detective Price's omission of D.D.'s lack of knowledge as to whether Bennett viewed child pornography was not "designed to mislead" the reviewing judge. *Tate*, 524 F.3d at 455 (citation omitted).

### 3. Parenting Plan

D.D. claimed that Bennett viewed child pornography on his cell phone in three different portions of a parenting plan filed in an ancillary proceeding to Bennett's state criminal case. (Doc. 143-6 at 8, 13, 14.) D.D. admittedly sought Detective Price's advice about how to ensure that Bennett did not have custody of

his daughter. (Doc. 144 at Exhibit H.) Nothing in the record suggests, however, that Detective Price knew anything further about the parenting plan or otherwise what D.D. had stated in the parenting plan. Detective Price's failure to include details about D.D.'s filed parenting plan therefore had not been "designed to mislead" Judge Pinski. *Tate*, 524 F.3d at 455 (citation omitted).

### 4. Previous Inquiry into Probable Cause to Search

Detective Price contacted the Cascade County Attorney's Office on the day of Bennett's arrest. (Doc. 143-5 at 3.) Detective Price informed Deputy County Attorney Racki of all the information that Detective Price knew in relation to the cell phone and Bennett. *See id.* Deputy County Attorney Racki explained to Detective Price that he lacked probable cause to search the cell phone. (Doc. 143-5 at 3.) Detective Price accordingly did not seize or search Bennett's cell phone. Detective Price did not apply for a warrant to search Bennett's cell phone on that date. Detective Price's failure to include the fact that he never applied for a search warrant on October 13, 2015, to search Bennett's cell phone as he knew that no probable cause existed was not "designed to mislead" Judge Pinski. *Tate*, 524 F.3d at 455 (citation omitted).

### 5. Bennett's Acquittal

Bennett alleges his acquittal in state court—only two weeks before Doe's disclosure—should have been disclosed in the affidavit supporting the warrant to

13

search Bennett's cell phone. (Doc. 142 at 15.) Detective Price testified that he contacted Deputy County Attorney Ball, the lead prosecutor in Bennett's previous state case, following Doe's disclosure to Castle and Doe's forensic interview. (Doc. 174.) Detective Price explained that he contacted Deputy County Attorney Ball regarding concerns about whether he could investigate this new allegation in light of Bennett's acquittal on the felony incest charge. *Id.* Detective Price represented that Deputy County Attorney Ball stated that the County Attorney's Office would be treating Doe's recent disclosure as a new case. *Id.*

Deputy County Attorney Ball drafted the affidavit in support of the search warrant based on Detective Price's information related to Doe's allegation that Bennett had taken photos of her. *Id.* Detective Price signed the affidavit. *Id.* Detective Price admitted that he decided against including Bennett's acquittal in the affidavit. *Id.* Detective Price reasoned that he thought inclusion of the acquittal, and of the information underlying Bennett's previous felony incest charge, would prejudice Bennett. *Id.* Detective Price and Deputy County Attorney Ball elected therefore to keep all information from Bennett's felony incest charge and acquittal separate from Doe's new allegation that Bennett had taken inappropriate photos of her. *Id.*

Detective Price testified that he elected also not to include previous investigations into allegations of sexual abuse by Bennett. *Id.* Detective Price

testified that he did include, however, that Doe was seeing Castle in relation to sexual abuse by Bennett. *Id*. Detective Price further testified that he included Doe's disclosure of instances of hands on abuse because Doe had relayed those instances during her August 24, 2019, forensic interview. *Id*.

The facts in *United States v. Perkins,* 850 F.3d 1109 (9th Cir. 2017), though admittedly not identical, prove most analogous to Bennett's alleged omission. The defendant, Charles Perkins, was traveling from Chile to his home in Washington state. *Perkins*, 850 F.3d at 1112. Canadian Border Services Agency ("CBSA") officers stopped Perkins at the Toronto International Airport upon discovering that Perkins was a registered sex offender. *Id*. A CBSA officer subsequently searched Perkins laptop and discovered two images that the CBSA officer believed to be child pornography. *Id*. at 1113. Canadian officials arrested Perkins for possession of child pornography. *Id*. Constable Andrew Ullock reviewed the images and ultimately concluded that the images failed to constitute child pornography. *Id*.

CBSA forwarded Perkins case to United States Department of Homeland Security Special Agent Tim Ensley. *Id*. Agent Ensley received the two images in question on January 14, 2013. *Id*. Agent Ensley drafted an affidavit in support of a warrant to search Perkins's home. *Id*. Agent Ensley drafted the affidavit before he had received the two images. *Id*. Agent Ensley's "affidavit explained that Canadian officers stopped Perkins because of his prior convictions and arrested him after

reviewing the images." *Id*. His affidavit failed to disclose, however, that the Canadian officers had dropped the charge against Perkins once they discovered that the images did not constitute child pornography. *Id*. at 1113-14. The magistrate judge issued a search warrant to Agent Ensley. *Id*. at 1114.

The district court conducted a *Franks* hearing and concluded that "Agent Ensley did not intentionally or recklessly mislead the magistrate." *Id*. at 1115. The district court denied Perkins's motion to suppress. *Id*. The Ninth Circuit reversed. The district court clearly erred when it had concluded that "Agent Ensley did not act with at least a reckless disregard for the truth." *Id*. at 1119. Agent Ensley actively selected information to provide in his affidavit in support of the search warrant that "bolster[ed] probable cause, while omitting information that did not." *Id*. at 1117. Agent Ensley stated that Canadian officers had arrested Perkins after having reviewed the two images. *Id*. Agent Ensley failed to disclose in his affidavit that Canadian officials had dropped Perkins's charge after a "15-year veteran officer, specializing in the investigation of child exploitation crimes, examined those same two images and concluded they were not pornographic." *Id*. The Ninth Circuit concluded that the affidavit "would not have supported probable cause" if the omitted information had been included in the search warrant affidavit. *Id*.

Detective Price, like Agent Ensley in *Perkins*, failed to disclose the fact that Bennett previously had been charged with, and acquitted of, incest in state court—

a charged based on the allegations of the same complaining witness, Doe.

Detective Price testified that he elected to omit information underlying Bennett's acquittal or the acquittal itself as Detective Price did not want to prejudice Bennett. (Doc. 174.) Detective Price nonetheless elected to include the following information related to Bennett's felony incest charge: (1) that "Castle had been seeing 9 year old Jane Doe in relation to sexual abuse by her step-father, Brandon Bennett;" (2) that "Doe reported that Bennett touched her in the vaginal and chest area. She stated that he touched under her clothes with his 'little willy thingy;'" and (3) that Bennett was "arrested in October 2015." (Doc. 142-2 at 1, 2.) Detective Price actively selected information to provide in his affidavit in support of the search warrant that "bolster[ed] probable cause, while omitting information that did not" when he elected to omit Bennett's acquittal, but include information related to Bennett's conduct underlying the alleged incest. *Perkins*, 850 F.3d at 1117.

Detective Price testified that he sought legal advice from Deputy County Attorney Ball regarding the search warrant and the preparation of the affidavit. (Doc. 174.) The Court does not know the exact nature of the legal advice provided by the County Attorney's office. Such advice was faulty. The apparent result of the legal advice was Detective Price's failure to disclose in his affidavit Bennett's acquittal on a similar charge that dealt with the same complaining witness. The

deliberate or reckless omission by a government official, even if not the affiant, can provide the basis to suppress evidence under *Franks*. *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992); *Chism v. Washington*, 661 F.3d 380, 392 (9th Cir. 2011).

This failure to disclose Bennett's acquittal in Detective Price's affidavit manipulated the inferences that Judge Pinski could draw because Detective Price reported "less than the total story." *Stanert*, 762 F.2d at 781. This conclusion proves especially true in light of Detective Price's affidavit having disclosed facts related to Bennett's acquittal. The noticeable silence in Detective Price's affidavit on Bennett's previous acquittal on a similar charge proves "as troubling as it is unjustifiable." *Meling*, 47 F.3d at 1554. Bennett has satisfied the first *Franks* hearing prong. Upon review of Bennett's allegations, the Court determines that Bennett has established that one fact had been omitted with the intent to mislead— Bennett's acquittal of Felony Incest in state court on August 10, 2016.

## B. Materiality

The better practice would have been for Detective Price to have included the acquittal in his affidavit in support of the search warrant. The Court must do more than evaluate best practices. The Court instead must evaluate whether Detective Price's affidavit, bolstered with Bennett's acquittal in state court, would have provided probable cause for the state judge to have issued the warrant as required

by the Fourth Amendment. In this regard, Bennett must "show that these deceptions are material; that is, he has to show that the district judge could not have found probable cause supporting" the warrant to search Bennett's cell phone if the district judge had been apprised of Bennett's acquittal. *Meling*, 47 F.3d at 1554. "The key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'" *Perkins*, 850 F.3d at 1119 (citation omitted).

"[N]o Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The validity of a search warrant depends upon the sufficiency of what is found within the four corners of the underlying affidavit." *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983) (citing *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1978)). The Court must void the search warrant as fruit of the poisonous tree "if probable cause [is] lacking on the face of" the modified affidavit. *Franks*, 438 U.S. at 156.

The probable cause analysis "involve[s] a close scrutiny of the facts supporting a law officer's belief that evidence of crime can be found in the place of search." *United States v. Brooks*, 367 F.3d 1128, 1133 (9th Cir. 2004). Probable cause represents "a practical, nontechnical conception." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Probable cause seeks to balance the need to "safeguard

citizens from rash and unreasonable interferences" with the need to provide officers "fair leeway for enforcing the law in the community's protection." *Id.* "[P]robable cause exists when there exists 'a fair probability or substantial chance of criminal activity.'" *Brooks*, 367 F.3d at 1133-34 (quoting *United States v. Alaimalo*, 313 F.3d 1188, 193 (9th Cir. 2002)). "[P]robable cause does not require a certainty . . . that criminal activity took place." *Brooks*, 367 F.3d at 1134. The Court examines the totality of the circumstances "known to the officer to determine whether probable cause existed." *Id.*

The Court's inclusion of Bennett's acquittal leads the search warrant affidavit now to read as follows:

> On August 23, 2016, GFPD Detective Price received a call from child counselor Robin Castle. Castle had been seeing 9 year old Jane Doe in relation to sexual abuse by her step-father, Brandon Bennett. ***A jury acquitted Bennett of the charge of Felony Incest on August 19, 2019. Bennett's Felony Incest charge was based on Doe's allegations that Bennett was sexually abusing her.*** Castle informed Price that Doe had disclosed that Bennett had taken pictures of Doe naked with his cell phone while making her pose in certain positions. Castle informed Doe's mother and Doe's mother brought the cell phone to Castle's office.

> Detective Price met with Castle and Doe's mother at Castle's office. Doe's mother informed Detective Price that the phone belonged to Bennett and that she tried to get into the phone herself to look at it but that she did not know the passcode. Doe's mother provided the phone to Detective Price and a forensic interview was scheduled for Doe.

> On August 24, 2016, Detective Noah Scott performed a forensic interview with Doe. Doe disclosed that Bennett "hurt her." Bennett took pictures of Doe "down there" referring to her vaginal area. Bennett also took pictures of her chest. All of these pictures were taken with Bennett's phone. Doe also

reported that Bennett touched her in the vaginal and chest area. She stated that he touched under her clothes with his "little willy thingy" and took pictures with his phone while touching her. Doe reported that this all occurred at their house in her mom's room. ***The jury had heard similar evidence from Doe of alleged sexual abuse at the Felony Incest trial in state court.***

Doe disclosed that when Bennett took the pictures he made Doe spread her legs and lift her legs up while she laid on her back. Doe felt scared when this happened and reported that only she and Bennett were in the room while he did this and while he took the pictures.

After this interview, Detective Price spoke with Doe's mother. Doe's mother reported that this was Bennett's only phone and that he had used it for at least a year prior to him being arrested in October 2015 ***on the Felony Incest charge.*** Doe's mother stated that after he was arrested she tried to get into the phone as she was suspected that Bennett looked at child pornography, however she could not access the phone as it was protected by a passcode. (sic).

(Doc. 142-2 at 1-2) (modifications and emphasis added).

The inclusion of the Bennett's acquittal clouds the following facts: (1) that "Castle had been seeing 9 year old Jane Doe in relation to sexual abuse by her step-father, Brandon Bennett;" (2) that "Doe also reported that Bennett touched her in the vaginal and chest area. She stated that he touched under her clothes with his 'little willy thingy;'" and (3) that Bennett had been "arrested in October 2015." (Doc. 142-2 at 1-2.) These facts—though admittedly related to Bennett's acquittal—also provide context for Doe's allegation that Bennett had taken photos of him hands on abusing her.

The fact that a jury had acquitted Bennett presents one reasonable conclusion that the State had failed to prove beyond a reasonable doubt that Bennett was guilty of Felony Incest. The Supreme Court long has recognized that "[w]hatever evidence may be necessary to establish probable cause in a given case, however, it is clear that it never need rise to the level required to prove guilty beyond a reasonable doubt." *United States v. Watson*, 423 U.S. 411, 431 n. 4 (1946). Bennett's acquittal does not necessarily negate the fact that probable cause existed for the State to charge Bennett with Felony Incest.

The other information included in the warrant further bolsters the clouded facts noted above. The search warrant affidavit alleged in sufficient detail that Bennett had posed Doe in certain positions when he had taken photos of her. (Doc. 142-2 at 2.) The affidavit likewise specified the areas of Doe's body of which Bennett had taken photos. *Id*. The affidavit further explained that only Bennett and Doe were in the room when he had taken the inappropriate photos. *Id*. The affidavit further clarified Bennett had used his cell phones to take the said photos of Doe. *Id*. And finally, the affidavit included a claim that D.D. had suspected that Bennett had used his cell phone to look at child pornography. *Id*.

The Court determines that probable cause remains even after the Court has supplemented the evidence presented to Judge Pinski with Bennett's acquittal on the Felony Incest charge. *See Perkins*, 850 F.3d at 1119. The Court must void the

search warrant as fruit of the poisonous tree "if probable cause [is] lacking on the face of" the modified affidavit. *Franks*, 438 U.S. at 156. Probable cause to search Bennett's cell phone exists on the face of the modified affidavit in support of the search warrant. Bennett's motion to suppress must be denied. The jury will decide whether the government's evidence rises to the level required to prove guilt beyond a reasonable doubt. *See Watson*, 423 U.S. at 431 n.4.

## II. Motion for Bill of Particulars

The Grand Jury indicted Bennett on two counts: Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) (Count I) and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count II). (Doc. 1.) Count I provides as follows:

> That on or about August 14, 2015, in Cascade County, in the State and District of Montana and elsewhere, the defendant, BRANDON CORDELL BENNETT, did employ, use, persuade, induce, entice, and coerce and attempt to employ, use, persuade, induce, entice and coerce any minor, Jane Doe, who is known to the defendant but whose name is withheld to protect her identity, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, in violation of 18 U.S.C. § 2251(a).

*Id*. at 2.

Bennett argues that the indictment is deficient as none of the discovery explains how the Government arrived at the date of on or about August 14, 2015. (Doc. 146 at 2.) The Government admitted in its brief and during the status

conference that the date in the Indictment incorrectly identified the time of the alleged offense. (Docs. 151, 155 at 14.)

Federal Rule of Criminal Procedure 7(f) authorizes the Court to "direct the government to file a bill of particulars." The defendant "may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). "The government may amend a bill of particulars subject to such conditions as justice requires." *Id*. The Court should grant a motion for a bill of particulars where the record indicates that the defendant may be taken by surprise in the progress of the trial or that his substantial rights would be prejudiced in any way by the refuse to require the bill of particulars. *Wong Tai v. United States*, 273 U.S. 77, 82 (1927).

The Government filed a Superseding Indictment on April 4, 2019. (Doc. 164.) Count I of the Superseding Indictment charges as follows:

> Between on or about January 2015 and October 2105, in Cascade County in the State and District of Montana and elsewhere, the defendant, BRANDON CORDELL BENNETT, did employ, use, persuade, induce, entice, and coerce and attempt to employ, use, persuade, induce, entice and coerce any minor, Jane Doe, who is known to the defendant but whose name is withheld to protect her identity, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, in violation of 18 U.S.C. § 2251(a).

*Id*. at 2. The filing of the Superseding Indictment rectifies Bennett's alleged concern. Bennett's Motion for a Bill of Particulars must be denied as moot.

24

### III.     Motion for Pretrial Judgment of Acquittal

Bennett finally moves this Court for a pretrial judgment of acquittal on Count I of the Superseding Indictment. (Doc. 168.) Bennett contends that the "absence of inappropriate images of Jane Doe on Brandon's phone is near conclusive that Jane Doe's August 23, 2016 accusation was not true." (Doc. 169 at 4.) Bennett argues that the absence of inappropriate images likewise means that the Government "no longer has a good faith basis for proceeding with Count I." *Id.* Bennett further argues that there still exists no basis for the dates alleged in Count I. *Id.* at 5.

The Government contends that Bennett's motion proves untimely as there exists no good cause basis for Bennett filing his motion past the March 15, 2019, motions deadline. (Doc. 170 at 6.) Federal Rule of Criminal Procedure 12(b)(3) governs pretrial motions. Rule 12(b)(3) provides as follows:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits: . . . (B) a defect in the indictment or information, including: . . . (v) failure to state an offense.

Fed. R. Crim. P. 12(b)(3). The Court "may . . . set a deadline for the parties to make pretrial motions." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

The Court set a motions deadline of March 15, 2019. The Government filed the Superseding Indictment on April 5, 2019. (Doc. 164.) The Court agrees with the Government that Count I of the Superseding Indictment remains substantially similar to Count I of the Indictment. The change of the alleged date in Count I of the Superseding Indictment supports, however, a showing of good cause. Bennett's motion proves timely.

The Government alternatively contends that Bennett's motion should be denied based on the merits as Bennett's motion masks itself as a motion for summary judgment. (Doc. 170 at 6.) There exists "no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case." *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995). In a criminal case "the government has no duty to reveal all of its proof before trial." *Id.* The Court will treat Bennett's Motion for Pretrial Judgment of Acquittal as a Motion to Dismiss Count I of the Indictment.

The government must provide in the indictment "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against him he must defend, and, second, enables him to plead an acquittal or

conviction in bar of future prosecutions for the same offense." *United States v. Bailey*, 444 U.S. 394, 414 (1980).

"In cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all the elements necessary to constitute the offense." *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (internal quotations and citation omitted). Count I of the Superseding Indictment tracks the language of 18 U.S.C. § 2251(a). Count I of the Superseding Indictment "unambiguously set[s] forth all the elements necessary to constitute" Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). *Davis*, 336 F.3d at 922. The Government has met its Rule 7(c)(1) obligations.

Accordingly, **IT IS ORDERED**:

1. Bennett's Motion to Suppress (Doc. 141) is **DENIED**.

2. Bennett's Motion for Bill of Particulars (Doc. 145) is **DENIED AS MOOT**.

3. Bennett's Motion for Pretrial Judgment of Acquittal, characterized as a Motion to Dismiss Count I of the Indictment (Doc. 168) is **DENIED**.

DATED this 16th day of April, 2019.

_____
Brian Morris
United States District Court Judge