IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 17-68-GF-BMM |
| Plaintiff/Respondent, | CV 22-22-GF-BMM |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| BRANDON CORDELL BENNETT, | |
| Defendant/Movant. | |

This case comes before the Court on a motion filed by Defendant/Movant

Brandon Cordell Bennett ("Bennett"), a federal prisoner proceeding *pro se*, to

vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.

## I.      Motion to Appoint Counsel

Bennett requests the Court appoint counsel to represent him in these

proceedings. (Doc. 234.) No constitutional right to appointment of counsel exists

in habeas proceedings. *Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987). Bennett

does possess a statutory or rule-based ground, however, for obtaining counsel in

certain situations. District courts may "appoint counsel for an applicant who is or becomes financially unable to afford counsel." 8 U.S.C. § 2254(h); *accord* 28 U.S.C. § 2255. The Criminal Justice Act, 18 U.S.C. § 3006A, and Rules 6 and 8 of the Rules Governing Section 2254 Cases and the Rules Governing Section 2255 Proceedings regulate appointment of counsel. 28 U.S.C. § 2254(h); 28 U.S.C. § 2255.

District courts have the discretion to order the appointment of counsel for a financially eligible individual who is seeking relief under 28 U.S.C. § 2255, at any stage of the case when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2); Rule 8(c) of the Rules Governing Section 2254 Cases and the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. §§ 2254 & 2255; *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). "In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Weygandt*, 718 F.2d at 954.

Appointment of counsel to assist financially eligible, non-capital habeas corpus petitioners and section 2255 movants may be required in at least two situations: (1) when the court determines that counsel is "necessary for effective utilization of discovery procedures"; and (2) when the court determines that "an

2

evidentiary hearing is required." Rules 6(a) and 8(c) of the Rules Governing

Section 2254 Cases and Rules Governing Section 2255 Proceedings. 28 U.S.C.

foll. §§ 2254 & 2255; *see United States v. Duarte-Higareda*, 68 F.3d 369, 370 (9th

Cir. 1995); *Weygandt*, 718 F.2d at 954.

As explained herein, the record conclusively demonstrates that Bennett is

not entitled to relief and an evidentiary hearing is not required. Accordingly, his

motion for appointment of counsel will be denied.

## II.    Preliminary Review

The Court must determine whether "the motion and the files and records of

the case conclusively show that the prisoner is entitled to no relief" bdefore the

United States is required to respond. 28 U.S.C. § 2255(b); *see also* Rule 4(b),

Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional

error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98

F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring)

(referring to Rules Governing § 2254 Cases). The Court should "eliminate the

burden that would be placed on the respondent by ordering an unnecessary

answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254

Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255

Proceedings.

### III.   Background

A Federal Grand Jury indicted Bennett on October 5, 2017, on one count of Sexual Exploitation of a Child, a violation of 18 U.S.C. § 2251(a) (Count I), and one count of Receipt of Child Pornography, a violation of 18 U.S.C. § 2252(a)(2) (Count II). (*See* Indictment, Doc. 1 at 1.)

Four different counsel represented Bennett during the underlying proceedings. Section IV(E), regarding Bennett's speedy trial claim discusses the procedural history of Bennett's various counsel and their representation in greater detail. Bennett filed a motion to change his plea and a signed plea agreement early in the proceedings, while represented by his first counsel, R. Henry Branom ("Mr. Branom"). (Docs. 27 & 28.) The change of plea proceedings never happened. Bennett instead requested that the Court appoint new counsel. (Doc. 32.) The Court appointed Bennett's second counsel, Jason T. Holden ("Mr. Holden"). (Doc. 35.)

Mr. Holden filed a motion to withdraw after having represented Bennett for approximately three months. Mr. Holden informed the Court that Bennett had demanded that he withdraw based on a conflict that had created a breakdown in the attorney-client relationship. (Doc. 42.) The Court allowed Mr. Holden to withdraw and appointed a third counsel, Colin M. Stephens ("Mr. Stephens"), to represent Bennett. (Docs. 45 & 46.)  Mr. Stephens filed suppression motions on Bennett's behalf and the Court conducted an evidentiary hearing. The Court denied Bennett's

4

suppression motions and Bennett filed a motion to change his plea and a written plea agreement. (Docs. 76 & 77.)

Bennett appeared before U.S. Magistrate Judge Lynch on June 12, 2018, and entered a plea of guilty to Count II, in exchange for dismissal of Count I. (Doc. 89.) Magistrate Judge Lynch recommended that Bennett be adjudged guilty of Count II. (Doc. 92 at 2.) The Court adopted Magistrate Judge Lynch's findings and recommendations on June 27, 2018, and granted Bennett's motion to change his plea. (Doc. 95 at 2.) The Court deferred acceptance of the plea agreement until sentencing. (*Id.*)

On November 6, 2018, instead of proceeding to a sentencing hearing, Mr. Stephens moved the Court to withdraw from representation of Bennett. The Court conducted an *ex parte* hearing and granted Mr. Stephens's motion to withdraw. (Doc. 110.) The Court informed Bennett that he would be appointed one only more counsel, after that he would have to represent himself. (*Id.*; *see also* Doc. 124 at 19-20.) The Court appointed Bennett his fourth counsel, Wendy Holton ("Ms. Holton"). (Doc. 111.) The Court rescheduled the sentencing for December 10, 2018. (Doc. 112.)

Ms. Holton ultimately filed a motion to withdraw Bennett's guilty plea. (Doc. 120.) The granted the motion and re-set the trial.  Bennett filed a renewed motion to suppress cell phone evidence and brief in support on March 15, 2019

(Docs. 141 & 142), as well as a motion for a bill of particulars, a motion for subpoena deuces tecum, and a renewed motion to exclude Rule 414 & 404(b) evidence and briefs in support. (Docs. 141, 142, 143, 145, 146, 147, and 148.)

The Government filed a superseding indictment on April 4, 2019. (Doc. 164.) Bennett then filed a motion to dismiss Count I of the indictment and brief in support. (Docs. 168 & 169.) The Court held a hearing on Bennett's outstanding motions on April 8, 2019. The Court determined that Bennett was entitled to a *Franks* hearing to evaluate "the validity of the affidavit underlying a search warrant." *United States v. Kleinman*, 880 F.3d 1020, 1038 (9th Cir. 2017). (*See e.g.* Min., Doc. 174.) A defendant is entitled to such a hearing if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008).

The Court denied Bennett's motion to suppress and motion for pretrial acquittal/dismissal of Count I of the indictment on April 10, 2019. (Doc. 183.) The Court denied as moot Bennett's motion for a bill of particulars. (*Id.* at 23-24.) Bennett filed a motion to change his plea and set a sentencing hearing the same day that the Court denied the motions. (Doc. 184.) As part of the plea agreement,

Bennett reserved his right to appeal this Court's ruling on his motion to suppress cell phone evidence. (*See* Doc. 186 at 8, ⁋ 11.)

The Court conducted the change of plea and sentencing hearing on April 11, 2019. Bennett pled guilty to Count II of the superseding indictment. The Court dismissed Count I upon the Government's motion. (*See* Min. Doc. 190; *see also* Amd. Judg. Doc. 211 at 1.) The Court committed Bennett to the custody of the Bureau of Prisons for 178 months, to be followed by a ten-year term of supervised release. (*See* Am. Judg. Doc. 211 at 3.) Bennett appealed. (Doc. 201.)

Bennett claimed that the police officers violated his Fourth Amendment rights when the officers omitted material facts from the warrant application to search his cell phone and that the Court erred in denying his motion to suppress. The Court rejected Bennett's argument on May 28, 2020, and affirmed his conviction and sentence. (*See* Mem. Doc. 219 at 2-4, *United States v. Bennett*, No. 19-30079 (9th Cir. May 28, 2020)).

Bennett filed a petition for *writ of certiorari*. The United States Supreme Court denied the petition on March 8, 2021. (*See* Clerk Letter, Doc. 225.)

Bennett's conviction became final on March 8, 2021. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Bennett timely filed his § 2255 motion on February 23, 2022. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

## IV.   Claims and Analysis

The Court has considered all of Bennett's challenges to the validity of his conviction and sentence. The Court denies Bennett's § 2255 motion for the reasons explained herein.

### A. Legal Standard

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States […] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981).

### B. Bennett's Claims

In the instant petition, Bennett advances the following claims:

1.   Counsel provided ineffective assistance ("IAC") in making decisions with incomplete information;

8

2.     Counsel provided IAC by failing to undertake the following: properly impeach witnesses/evidence, make a missing police document known, and point out County Attorney Ball was a factor in search warrant;

3.     Counsel provided IAC by failing to perform the following: object to Bennett's waiver of speedy trial, object to the lack of representation that led to the speedy trial violation, and object to the judicial bias/prejudice surrounding speedy trial violation;

4.     Counsel provided IAC by failing to conduct the following: investigate all material evidence, call a material witness at *Franks* hearing, object to the Government re-indicting on Count I;

5.     Counsel provided IAC by failing to obtain an independent computer expert to answer/rebut the evidence;

6.     Counsel provided IAC by failing to call K.B. as a witness; and,

7.     Actual Innocence

Aside from his actual innocence claim, Bennett's remaining claims allege that his fourth attorney, Ms. Holton, provided ineffective assistance of counsel either in relation to his *Franks* hearing (claims 1, 2, 4, 5, and 6) or in relation to a purported speedy trial violation (claim 3). Bennett provides five separate claims relative to the *Franks* hearing issue. The claims generally duplicate each other. The Court will discuss each set of claims in turn.

### C. Summary of the Cell Phone Search/Suppression Issue

Bennett's IAC claims surrounding the *Franks* hearing require an understanding of the prior proceedings to resolve. Bennett initially litigated related matters in state court proceedings. The State of Montana charged Bennett in Montana's Eighth Judicial District Court, Cascade County, with Incest in October 2015. The alleged victim was Bennett's step-daughter, Jane Doe ("Doe"). The case proceeded to trial. The jury found Bennett not guilty of Incest on August 10, 2016.

9

(*See e.g.* Or., Doc. 183 at 1-2.)

Shortly after the trial, on August 23, 2016, Doe disclosed to her counselor that Bennett "had taken photos of [Doe] naked with his cell phone while making her pose in certain positions." (*Id.* at 3.) Doe's counselor informed Detective Price of the allegations and also advised him that Doe's mother was at the counseling office with Bennett's cell phone. (*Id.*) Doe's mother turned the phone over to the Great Falls Police Department.

The following day, Doe underwent a forensic interview during which she repeated similar allegations of having been photographed by Bennett. Detective Price applied for a warrant on August 31, 2016, to search Bennett's phone. (*Id.* at 3-4.) Detective Price failed to mention Bennett's recent state court acquittal on the Incest charge in his affidavit in support of the warrant request. The Montana state district court judge issued the warrant that same day. (*Id.*)

Detective Price extracted data from Bennett's cell phone on September 1, 2016, and observed images of child pornography. (*Id.* at 4.) Subsequent warrants obtained by law enforcement officers between September 2016 and March 2017 revealed 1,043 images of child pornography from the cell phone. (*Id.* at 5.)

Bennett mounted a second challenge to the cell phone search while represented by Ms. Holton seeking to suppress the evidence and also requesting a *Franks* hearing. The Court previously had denied a motion to suppress filed by Mr.

10

Stephens when he had represented Bennett. (Docs. 76 & 77.) Once the Court determined that Bennett was entitled to a *Franks* hearing, this Court examined whether Detective Price intentionally or recklessly had omitted facts from the affidavit with an intent to mislead the Montana state district court judge in the application for the search warrant. The Court concluded that the following omissions were not designed to mislead: (1) prior to the state Incest trial Doe had never made disclosures regarding Bennett taking photos of her; (2) prior to the Incest trial Doe's mother never made prior reports to law enforcement of Bennett viewing child pornography; (3) details of Bennett and Doe's mother's parenting plan of which Detective Price had no prior knowledge; and (4) the prior 2015 determination that law enforcement lacked probable cause to search Bennett's cell phone in conjunction with the Incest investigation. (*Id*. at 11-13.) The Court determined, however, that Detective Price had omitted Bennett's state court acquittal with the intent to mislead the Montana state district court judge. (*Id*. at 13-18.)

The Court next reconsidered the search warrant affidavit with the omitted information included. (*Id*. at 19-20.) The Court determined that probable cause remained even after the affidavit had been supplemented with the information pertaining to Bennett's state court acquittal. (*Id*. at 21-22.) Probable cause existed on the face of the modified affidavit. The Court denied Bennett's motion to

suppress the cell phone evidence. (*Id*. at 22.) The Court noted that whether the government's evidence would rise to the level of proof beyond a reasonable doubt remained a question for the jury to decide. (*Id*.)

The Ninth Circuit recognized that the Court's determination at the first step of the *Franks* hearing had been complicated by the fact that the attorney assisting Detective Price with the affidavit, Cascade County Attorney Ball, had served as the lead counsel in Bennett's state Incest trial. This experience had provided Bell with independent knowledge of the facts. *United States v. Bennett,* 806 Fed. App'x. 605, 606 (9th Cir. 2020) (unpublished), *cert. denied*, 209 L. Ed. 2d 259 (Mar. 8, 2021). The Ninth Circuit affirmed the denial of the motion to suppress, nonetheless, on that basis that probable cause would have existed even if all the omissions identified by Bennett had been included in the warrant application. *Id*. Specifically, the Ninth Circuit noted the contradiction:

> True, the omitted facts could support an inference that Jane Doe's mother coaxed Jane into accusing Bennett of taking photos so that law enforcement would have justification for accessing Bennett's phone. But this does not negate any of the "facts necessary to the finding of probable cause." *Cameron v. Craig*, 713 F.3d 1012, 1020 (9th Cir. 2013) (internal quotation marks omitted). Considering the totality of the facts -- including Jane's prior reports of molestation and the fact that Jane provided a consistent account of Bennett taking the photos to both her counselor and the forensic interviewer- a fair probability existed that Jane was telling the truth and that evidence of the crime would be found on Bennett's phone. *Cf. Perkins*, 850 F.3d 1122; *Stoot v. City of Everett*, 582 F.3d 910, 919-21 (9th Cir. 2009).

*Id*. at 606-07. Bennett takes issue with the rulings made by both this Court and the

Ninth Circuit.

### D. IAC at *Franks* hearing

In relation to the *Franks* hearing, Bennett claims counsel was ineffective in various respects. (Doc. 231-1 at 1-15.) "Sixth Amendment ineffective assistance of counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue" remain available for review in federal habeas proceedings. *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). A petitioner claiming ineffective assistance of counsel must allege specific facts which, if proved, would demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). Mere conclusory allegations do not prove that counsel was ineffective. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

A petitioner fails to state a claim for ineffective assistance by failing to allege facts sufficient to meet either the "performance" or "prejudice" standard, and the district court may summarily dismiss his claim. Stated differently, "[t]o be entitled to habeas relief due to the ineffectiveness of defense counsel, petitioner

13

must establish both that counsel's performance was deficient and that the deficiencies prejudiced the defense." *Medina v. Barnes*, 71 F.3d 636, 368 (9th Cir. 1995) (quoting *Strickland*, 466 U.S. at 687, 689). A court must evaluate "counsel's performance from [their] perspective at the time of that performance, considered *in light of all the circumstances*, and we indulge a strong presumption that counsel's conduct fell within the 'wide range of reasonable professional assistance.'" *Medina*, 71 F.3d at 368 (emphasis added).

### i.   Decision making with incomplete information

Bennett's first claim seems to be grounded in his mistaken interpretation of what the Ninth Circuit stated on appeal. Bennett alleges that the Ninth Circuit "believes to be totally true" the fact that Doe's mother coaxed her into making the false claim accusing Bennett of taking photos of her and that the Ninth Circuit "agrees [Doe] told a lie." (Doc. 231-1 at 1, 4.) Bennett calls Doe's mother's credibility further into question when he claims that he apparently showed Doe's mother three images of child pornography on his phone in September 2015. (*Id.*) Bennett asserts that Doe's mother never mentioned the child pornography images in conjunction with his criminal proceedings. Bennett attempts to paint the mother as wholly untrustworthy.

Bennett further suggests that Doe disclosed Bennett's taking of the photos first to Doe's mother and then to her counselor who, in turn, contacted Detective

14

Price. Bennett believes that phone logs between Doe's mother, the counselor, and Detective Price would show that Doe had been coached by mother to lie to law enforcement. (*Id*. at 3-4.) Bennett contends that the Montana state court jury did not believe Doe or Doe's mother in the Incest trial. Bennett argues that this disbelief provides a further basis for finding them to be untruthful regarding the report of Bennett having taken Doe's photos. (*Id*. at 4.)

Bennett next argues that the missing forensic report of Detective Scott undermines the finding of the Court and the Ninth Circuit's agreement that Doe had provided a consistent account to both her counselor and Detective Scott of Bennett having taken photos. Bennett suggests that Detective Scott's report, if such report exists, would call into doubt Doe's credibility and possibly would prove that Doe's mother had coached Doe. (*Id*. at 3.) Bennett believes that this possibility explains why the Scott report had been omitted from discovery. Finally, Bennett believes all of these factors, paired with the "lies" of Detective Price and County Attorney Ball to the Montana state district court judge in obtaining the search warrant for the cell phone, indicate the Court's error in denying of the suppression motion. (*Id*. at 4.)

Viewed against the record, Bennett's conclusory allegations about Doe's credibility, the purported "coaching" by Doe's mother, or his speculation about the existence of the Scott report and what it might have shown warrant summary

dismissal of his petition. The crux of this claim stems from Bennett's mistaken belief that the Ninth Circuit determined that Doe had been coached to lie. Bennett bases this claim solely on his own speculations and conclusions. And although couched as an ineffective assistance of counsel claim, Bennett wholly fails to address either the "performance" or "prejudice" prong of *Strickland* as applied to Ms. Holton. The claim fails.

To the extent that Bennett tries to raise a Fourth amendment challenge to the search warrant under the guise of an IAC claim, he cannot do so here. A prisoner cannot seek habeas relief based on the use of unconstitutionally obtained evidence if he has had a "full and fair" opportunity to litigate the claim at trial or on direct appeal. *Kimmelman*, 477 U.S. at 375-76; *see also Stone v. Powell*, 428 U.S. 465, 482-83 (1976). Bennett had a full and fair opportunity to litigate his Fourth Amendment challenge. The Court held two evidentiary hearings regarding Bennett's challenge to the cell phone information. He raised the same issue on appeal. The reasoning of *Stone* precludes Bennett from relief in this proceeding. The claim will be denied.

### ii. Alleged failure properly to impeach witnesses/evidence; alleged failure to make the missing police document known; alleged failure to point out County Attorney Ball had been a factor in the search warrant

Bennett contends Ms. Holton provided ineffective assistance for failing to point out that Cascade County Attorney Ball had been involved in the search

warrant application process and that he previously had worked with Detectives

Scott, Slaughter, and Price on Bennett's state criminal case. He also believes Ms.

Holton failed to impeach the credibility and show bias of Doe's mother by not

asking about any misconduct Bennett may have committed toward her other

children or demonstrating that Bennett previously had shown Doe's mother images

of child pornography on his phone. Bennett also believes Ms. Holton failed to

point out that Detective Price had lied in the previous investigation and provided

"deliberate misinformation" when he stated he had removed himself from the

subsequent case. Finally, according to Bennett, Ms. Holton performed deficiently

by failing to call Detective Scott as a witness at the suppression hearing to ask why

his narrative report of the forensic interview was missing. (*See* Doc. 231-1 at 5-8.)

The Court concludes, upon review of the record, that Bennett's counsel did

not provide ineffective assistance for several reasons.  "There are countless ways to

provide effective assistance in any given case.  Even the best criminal defense

attorneys would not defend a particular client in the same way." *Strickland*, 466

U.S. at 689.

Bennett again asserts that in September 2015 he showed Doe's mother three

images of child pornography on his phone. (Doc. 231-1 at 5.) He claims Ms.

Holton provided ineffective assistance when she failed to present this information

to the Court in an effort to impeach Doe's mother's statement, given in a prior

17

parenting proceeding, that Bennett had "been known to look at child porn." (*Id*. at 6.) A review of the information presented in the affidavit for the search warrant indicates that Doe's mother informed Detective Price that she had been in possession of the phone at issue since Bennett was arrested on the state charges in October 2015. Doe's mother told Detective Price she had tried to access the images on the phone because she "suspected that Bennett looked at child pornography," but had been unable to access the phone due to its password protection. (*See* App. Search Warrant, Doc. 124-2 at 2.) Bennett claims Ms. Holton provided ineffective assistance for failing to confirm that Doe's mother did have knowledge of the contents of the phone. (Doc. 231-1 at 7-8.)

It is entirely reasonable to consider that during a suppression hearing in a child pornography case, Ms. Holton made a tactical decision not to call a witness who would testify that a year earlier, Bennett had shown her three images of child pornography on the same phone that was at issue in the hearing. It is worth noting, however, that Ms. Holton attempted to impeach the credibility of Doe's mother in another manner. Ms. Holton pointed out in an October 2015 interview with law enforcement that Doe's mother stated she had been unaware whether Bennett had sexual interest in children, and she had been unaware whether the phone had child pornography on it. (*Id*. at 29:22-25; 73:7-15.) Ms. Holton also noted that when the Doe's had been interviewed in August 2016, before turning over the phone, Doe's

mother stated that Bennett may have used his cell phone to look at child pornography. (*Id.* at 78-79.) Ms. Holton secured an admission from Detective Price that Doe's mother's later statement differed from what she had told law enforcement during the initial Incest investigation in 2015. (*Id.* at 79: 2-10.) The Court declines to second-guess that tactical decision with the benefit of hindsight. *See Strickland*, 466 U.S. at 689. Not only does Bennett fail to show Ms. Holton's performance fell below an objective standard of reasonableness, but he also fails to explain how this decision by Ms. Holton caused prejudice to him.

Bennett next claims that Ms. Holton failed to point out the role Cascade County Attorney Ball had played in the search warrant matter and his attendant bias, specifically that he had previously prosecuted Bennett and had a working relationship with the detectives involved. Any role that Detective Ball played in the search warrant application process served as the topic of discussion throughout the *Franks* hearing. Detective Price explained the steps he had taken after Doe's forensic interview:

| Det. Price: | After the forensic interview, I relayed the information particularly from the interview, to the county attorney's office, specifically, County Attorney Ryan Ball, who I knew was most familiar with the case because he was the prosecutor on the previous case. |
|---|---|
| AUSA Weldon: | Can you explain the relationship to the Court, please, sir, what the deputy county attorney—how he was involved in the original case? |

| Det. Price: | He was the prosecutor on the first case.  He was the lead prosecutor on the incest case.  And so when this new information came to my attention, because they called me, as far as when I relayed it to the county attorney's office, I wanted to tell him because he has all of the original information.  Plus, my concern was—it was new territory for me as far as, like, I'm thinking in my head "Double Jeopardy. What would I do here? Is this something I investigate? Is this a new case/ If it is a new case, how do I treat it?" Things of that sort. |

(*See* Trans. Doc. 203 at 55-56.)

Ms. Holton inquired on cross examination into the relationship between Detective Price and Deputy County Attorney Ball. Ms. Holton verified that Detective Price had helped Deputy County Attorney Ball prepare the state Incest case for trial. (*Id*. at 77:5-7.) Detective Price admitted that he and Ball had worked together on the cell phone warrant application. (*Id*. at 79:12-21.) Ms. Holton also elicited an admission from Detective Price that he and Ball jointly had made the determination omit information relating to Bennett's acquittal in the search warrant application. Ms. Holton demonstrated repeatedly that Deputy County Attorney Ball had been involved in the search warrant application process. (*Id*. at 81-82.) Bennett has failed to show that Ms. Holton performed deficiently in this respect.

Similarly, Bennett alleges that Detective Price lied during the first investigation and that he gave deliberate misinformation to the Court about having removed himself from the case.  Bennett never explains nature of the lie that Detective Price allegedly made in the previous investigation. (*See e.g.* Doc. 231-1

at 7.) Moreover, he does not tell how Detective Price provided incorrect

information to this Court. On cross examination, the following exchange took

place:

| Ms. Holton: | And then you excused yourself from this case, didn't you? |
|---|---|
| Det. Price: | Yes. |
| Ms. Holton: | Okay. Why did you do that? |
| Det. Price: | Because of positions like this.  I don't want to look unfair or prejudice[d]. |

(Doc. 203 at 84: 24-25 to 85: 1-3.)

Bennett does not explain the nature of his allegation and what information

Ms. Holton should have elicited from Detective Price relative to either the state or

federal investigation. Bennett also fails to explain what information Ms. Holton

should have used to impeach Detective Scott or Detective Slaughter. Bennett's

failure to provide such detail proves fatal to his IAC claim. Bennett has failed to

establish deficient performance or prejudice for purposes of *Strickland*.

Bennett repeatedly infers that the Government withheld a narrative report

from Detective Scott. Bennett has failed to show that such a report exists, much

less that it would have provided information favorable to him, or that it could have

been used to impeach those involved in the investigation leading to the seizure and

search of his phone. It is true that Doe's mother, Detective Slaughter, and

Detective Scott were not called as witnesses during the *Franks* hearing. Even if the

21

Court were to presume, however, that Ms. Holton's decision not to call these witnesses was deficient, Bennett's conclusory claims about what testimony they may have presented, fall far short of affirmatively proving that Ms. Holton's performance caused prejudice to him. *See Strickland*, 466 U.S. at 693. These claims also fail.

### i.   Failure to investigate all material evidence; failure to call all material witnesses and computer expert; and failure to object to reindictment

As a preliminary matter, Bennett faults counsel for not objecting to him being reindicted on Count I of the superseding indictment. (Doc. 231-1 at 14.) Ms. Holton made that very topic the subject of a motion to dismiss and brief in support, (Docs. 168 & 169), and one of the motions argued during that April 8, 2019, evidentiary hearing. (*See* Doc. 203 at 5-27.) Ms. Holton challenged Bennett's indictment on Count I of the superseding indictment. Bennett cannot now show that her performance had been deficient. *Strickland*, 466 U.S. at 689.

Bennett next argues counsel provided IAC by failing to call a computer expert to answer or rebut evidence. He posits such an expert could have addressed unanswered questions such as: whether the phone automatically download on its own from web pages; whether a person using an electronic device be positively identified by use of a passcode; and whether there a large number of illicit pictures had been downloaded in the days leading up to Bennett's October 2015 arrest. (*See* Doc. 231-1 at 15.) Bennett seems to suggest that another member of his household,

22

K.B., could have confirmed that Bennett had spoken to him about searching the web. Bennett infers that it may have been possible that it K.B., rather than Bennett, had been responsible for downloading the images of child pornography to Bennett's phone. (*Id.*)

The Court finds Ms. Holton did not perform deficiently in failing to call a computer expert. Undisputed evidence exists that the phone in the question, a Samsung Galaxy S III, was Bennett's only phone and that he had possessed it for over a year leading up to his 2015 arrest. (*See e.g.* Doc. 203 at 16:15-25; 36:17-25, 37: 1-8.) The phone contained a passcode and had been in the possession of Doe's mother since Bennett's arrest. Doe's mother had been unable to open the phone without knowing the passcode. (*See* App. for Search Warrant, Doc. 142-2 at 1- 2.) Attempts by Doe's mother to look at the contents of the phone's SD card had been unsuccessful because the picture folder also remained password secured. (Doc. 143-1 at 5.) The Government recovered 1,043 images of child pornography from Bennett's cell phone. (Doc. 142 at 12.) The undisputed evidence showed that Bennett himself had primary access and control over the phone before his 2015 arrest.  Bennett presents no evidentiary support for the inference that K.B., or someone else, had been responsible for downloading the images of child pornography to his phone. His suggestion that it is possible that someone else could have done so proves inadequate to warrant relief in these proceedings.

Bennett's conclusory allegations of IAC warrant summary dismissal for lack of merit. Bennett speculates that K.B. may have accessed his phone or that a computer expert may have been able to provide additional information, the subject of which is not entirely germane to the facts surrounding the child pornography receipt conviction. Bennett's motion and the lengthy files and records of this case conclusively show that he cannot satisfy either the "performance" or "prejudice" prong and surmount *Strickland*'s high bar.

### E. IAC Surrounding Speedy Trial Violation

Bennett claims that Ms. Holton provided ineffective assistance for failing to object to Bennett's waiver of his speedy trial rights, failing to address prior counsels' representation that purported led to the speedy trial violation, and failing to address the judicial bias and prejudice that resulted in his speedy trial waiver. (Doc. 231-1 at 9.) It is unclear from his petition whether Bennett alleges IAC based upon a statutory speedy trial claim under the Speedy Trial Act or a constitutional claim under the Sixth Amendment. The claim fails regardless of the framework for analysis.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy…trial." The U.S. Supreme Court has instructed courts to look to four factors in determining whether a defendant's right to a speedy trial has been violated: "[l]ength of delay, the reason for the delay, the

defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "*Barker* instructs that 'different weights should be assigned to different reasons,' and in applying *Barker*, we have asked 'whether the government or the criminal defendant is more to blame for the delay.'" *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (internal citations omitted). It weighs against the defendant if the defendant causes the delay. *Id.*

The Speedy Trial Act ensures that a criminal defendant who pleads not guilty will begin trial "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

The Act excludes the following periods from that time:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

Bennett contends that his first three counsel failed to represent him properly and in so doing, wasted the Court's time and led Bennett to forfeit his right to a speedy trial. (Doc. 231-1 at 9.) For example, Bennett claims Mr. Branom used up 72 calendar days of the speedy trial clock and that the Court unjustly counted all

this time against him. (*Id*.)  Similarly, Bennett alleges that Mr. Holden represented him for 101 calendar days and even though Mr. Holden moved to withdraw, Bennett was "blamed for [Holden's] incompetence." (*Id*. at 10.) Finally, Bennett claims that Mr. Stephens represented him for 171 calendar days and filed suppression motions on Bennett's behalf. Bennett argues nevertheless that Mr. Stephens was "armed with his own plan," and "his aspirations and ego" got in the way of Bennett's defense. (*Id*. at 10-11.) Bennett claims that the actions of these three counsel unjustly forced him to sign a waiver of speedy trial in order to give his fourth counsel, Ms. Holton, enough time to represent him and locate the evidence he had claimed was crucial to his case all along. (*Id*. at 11.) Bennett also asserts that the Court unjustly admonished him for the delays. A review of the underlying proceedings reveals that Bennett omits critical facts that undermine any speedy trial-related claims.

### i. Underlying proceedings

Bennett was arraigned on October 23, 2017. The Court appointed Mr. Branom to represent him. (*See* Or., Doc. 8.) The Government filed an unopposed motion to continue the trial due to witness unavailability and the motion also noted defense counsel was unavailable for trial in December due to a previously scheduled trial. (Doc. 13.) The Court entered an order granting the motion for an "ends of justice" continuance under 18 U.S.C. §§ 3161(h)(7)(A), (B)(i) and (B)(ii).

(Doc. 16 at 3.) The Court vacated the trial set for December 11, 2017, and scheduled a new trial for January 8, 2018. (*Id.*) The order excluded all time between November 1, 2017, and January 8, 2018, for purposes of speedy trial. (*Id.*) Nine days had elapsed on Bennett's speedy trial clock from the time of Bennett's arraignment to the filing of the Government's motion.

Bennett filed a motion on December 15, 2017, to change his plea and a signed plea agreement. (Docs. 28 & 29.) Bennett informed the Court just before the change of plea hearing, however, that he had issues with counsel and had advised Mr. Branom that he wished to have new counsel appointed. (See Min., Doc. 32.) The Court granted Bennett's request to for new counsel following an *ex parte* hearing. (Doc. 34.)

The Court appointed Mr. Holden to represent Bennett on January 8, 2018. (*See* Or., Doc. 35.) Mr. Holden filed an unopposed motion on February 2, 2018, to continue the rescheduled February 26, 2018, trial date for a period of 60 days. (Doc. 37.) Mr. Holden indicated he needed additional time to review discovery, meet with Bennett, and prepare for trial. (*Id.*) The Court again granted an ends of justice continuance. (Doc. 39 at 3.) The Court re-set the trial for April 30, 2018. (*Id.*)  The Court excluded for purposes of speedy trial all time from February 6, 2018, to April 30, 2018. (*Id.*) Twenty-nine days had elapsed on Bennett's speedy trial clock during the period between January 8, 2018, and February 6, 2018.

Mr. Holden filed a motion to withdraw as Bennett's attorney on March 30, 2018, advising the Court that a conflict had arisen. (Doc. 42.) Following an *ex parte* hearing held on April 19, 2018, the Court granted Mr. Holden's motion to withdraw. (Doc. 45.) The Court appointed Mr. Stephens to represent Bennett that same day. (*See* Or., Doc. 46.)

Mr. Stephens filed an unopposed motion on April 23, 2018, to continue the April 30, 2018, trial date for a period of 60-days. (Doc. 47.) Stephens noted he needed additional time to review discovery, complete additional investigation, and review forensic reports and information obtained from Bennett's phone to discern whether further computer forensic evaluation had been conducted and/or was necessary. (*Id.*) The same day, the Court granted the ends of justice continuance and re-set the trial for June 4, 2018. (Doc. 49 at 3.) The Court excluded all time between April 23, 2018, and June 4, 2018, for purposes of speedy trial. (*Id.* at 4.) Four days had passed on Bennett's speedy trial clock between Mr. Stephens appointment and the granting of the motion to continue.

Mr. Stephens filed a motion to suppress the cell phone evidence and brief in support on May 5, 2018. (*See* Docs. 51 & 52.) Mr. Stephens also filed a motion to suppress Rules 414 and 404(b) evidence and a brief in support. (Docs. 54 & 55.) The Government filed an unopposed motion to continue the trial for a period of two weeks due to the unavailability of a witness on May 14, 2018. (Doc. 50.) The

Court granted the ends of justice continuance and resent the jury trial for June 18, 2018. (Doc. 56.) The Court excluded all the time between May 14, 2018, and June 18, 2018, for purposes of speedy trial. (*Id*. at 3.) The Court held a hearing on Bennett's motions on May 31, 2018. The Court denied both of Bennett's motions to suppress. (See, Min., Doc. 72.)

Bennett appeared before Magistrate Judge Lynch on June 12, 2018, and entered a plea of guilty to Count II, in exchange for dismissal of Count I. (Doc. 89.) The Court scheduled the sentencing hearing for October 4, 2018. (Doc. 89.) Mr. Stephens then moved for a 30-day continuance of Bennett's sentencing date to allow sufficient time for Bennett to undergo a psychosexual evaluation and to allow the parties time to review the report. (Doc. 100.) The Court re-set the sentencing hearing for November 6, 2018. (Doc. 101.)

Mr. Stephens moved the Court on November 6, 2018, to withdraw from representing Bennett. The Court conducted an *ex parte* hearing and granted Mr. Stephens's motion to withdraw. (Doc. 110.) The Court informed Mr. Bennett that he would get only one more counsel. (*Id*.) The Court rescheduled the sentencing hearing for December 10, 2018. (Doc. 112.)

The Court appointed Ms. Holton to represent Bennett on November 7, 2018. (Doc. 111.) The Court re-set the sentencing hearing for January 16, 2019. (Doc. 117.) Bennett filed a motion to withdraw his guilty plea on January 11, 2019. (Doc.

29

120.) The Court granted the motion on January 14, 2019, and scheduled trial for February 4, 2019. (Doc. 125.) Ms. Holton filed a motion to continue the trial on January 17, 2019. (Doc. 127.) Ms. Holton explained that at the time of her appointment, she was preparing for sentencing, but new developments in the case required her to prepare instead for trial and she needed adequate time to perform an investigation. (*Id.*) The Court granted the ends of justice continuance and re-set the trial for February 25, 2019. (Doc. 129 at 3.) The Court excluded all time between January 17, 2019, and February 25, 2019, for purposes of speedy trial. (*Id.* at 4.) Three days had passed on Bennett's speedy trial clock between the Court allowing withdrawal of Bennett's guilty plea to the granting of the ends of justice continuance.

Bennett again sought additional time to prepare for trial at a hearing held on January 31, 2019. Bennett filed a waiver of speedy trial during the hearing. (Doc. 136.) The Court advised Bennett that the trial would not be re-set again, but allowed one final continuance of the trial under 18 U.S.C. §§ 3161(h)(7)(A), (B)(i) and (B)(ii). (See Doc. 137 at 2.) The Court set a new trial date of April 15, 2019. (*Id.* at 3.) The Court excluded all time between January 31, 2019, and April 15, 2019, for purposes of speedy trial. (*Id.*)

Bennett filed a renewed motion on March 15, 2019, to suppress cell phone evidence and brief in support. (Docs. 141 & 142.) Bennett also filed a motion for a

bill of particulars, a motion for subpoena deuces tecum, and a renewed motion to

exclude Rules 414 & 404(b) evidence and briefs in support. (Docs. 141, 142, 143,

145, 146, 147, and 148.) The Court addressed Bennett's outstanding motions and

conducted the *Franks* hearing on April 8, 2019. (*See e.g*., Min., Doc. 174.)

The Court denied Bennett's motion to suppress and motion for pretrial

acquittal/dismissal of Count I of the indictment on April 10, 2019. (Doc. 183.)

Bennett filed a motion that same day to change his plea and set a sentencing

hearing. (Doc. 184.) The Court conducted the change of plea and sentencing

hearings on April 11, 2019.

### ii.  Speedy trial analysis

Only 45 days passed on Bennett's speedy trial clock when the Court

excludes all continuances from Bennett's speedy trial clock, and the time during

Mr. Stephens's representation after Bennett entered his guilty plea. Bennett did not

object to any of the continuances. Bennett did not assert his right to a speedy trial.

Aside from the government's single continuance at the outset of these proceedings,

Bennett was responsible for the rest of the delay. The continuances requested by

Mr. Holden, Mr. Stephens, and Ms. Holton after each had assumed representation

directly related to the need for defense counsel to become prepared for trial.

Exclusions are "necessarily required" when a substitution of counsel takes place

during proceedings. *United States v. King,* 483 F.3d 969, 976 (2007). It is not only

reasonable, but often necessary for defense counsel to seek continuances and corresponding exclusions to gain time to prepare a zealous defense. *United States v. Lam*, 251 F.3d 852, 858 (9th Cir. 2001). The Court fails to see how Bennett could overcome the presumption that counsels' requests for continuances were a matter of "sound trial strategy." *Strickland*, 466 U.S. at 689.

Bennett attempts to place blame for the delay on his first three counsel. It does not matter that defense counsel, rather than Bennett himself, asked for the delay. "Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," the Court charges delay caused by the defendant's counsel against the defendant. *Brillon*, 556 U.S. at 90 (quoting *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)). Moreover, Bennett appears to have engaged in some degree of gamesmanship. Bennett initially filed a motion to enter a guilty plea while represented by Mr. Branom. (*See* Doc. 27.) He now suggests that Mr. Holden provided ineffective assistance. At a prior hearing, however, Bennett informed the Court that he was satisfied with Mr. Holden's representation and had attempted to convince Mr. Holden to continue his representation, despite counsel's reservations. (Doc. 124 at 19.)

Bennett also acknowledges that his issue with his first three counsel arose from the advice that they each separately had provided: that materials from his prior dissolution proceedings and order of protection hearings were not relevant to

32

the federal criminal matter. (*Id*. at 6-7, 12-15, 17.) Bennett's disagreement with this advice apparently led him to dismiss Mr. Branom, resulted in Mr. Holden moving to withdraw, and resulted in Mr. Stephens moving to withdraw at the sentencing hearing. Ms. Holton apparently did obtain some of the information from the civil state proceedings that Bennett sought, it did not prove central to the Court's resolution of the issues presented at the *Franks* hearing. Moreover, the bulk of the delay occurred after Bennett entered a guilty plea to Count II of the indictment. No Speedy Trial Act violation occurred.

Based on the facts of these proceedings, aside from his own assertions, Bennet has failed to demonstrate that any of his counsels' performance proved deficient and has failed to raise a plausible inference that the outcome of his proceedings would have been different, but for their allegedly inadequate performance. *Strickland*, 466 U.S. at 688, 694. Bennett's failure to show a Speedy Trial violation also prevents fault to be attached to Ms. Holton for failing to raise a meritless claim. *See Morrison v. Estelle*, 981 F. 2d 425, 429 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993) (because argument would not have been successful, petitioner failed to sustain burden of proving ineffective assistance of counsel).

Bennett also seems to allege Ms. Holton provided ineffective assistance by acquiescing to a violation of his Sixth Amendment right to a speedy trial. As a general matter, the Sixth Amendment's guarantee of a Speedy Trial and the Speedy

Trial Act requirements present separate inquiries. "No provision of [the Speedy Trial Act] shall be interpreted as a bar to any claim of denial of speedy trial as required by as required by Amendment VI of the Constitution." 18 U.S.C. § 3171. Compliance with the Speedy Trial Act, however, suggests that the Sixth Amendment has not been violated. "[I]t will be an unusual case," however, "in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to a speedy trial has been violated." *United States v. King*, 483 F.3d 969, 977 (9th Cir. 2007). Bennett fails to present such an unusual case.

A court uses the four-part *Barker* test to determine whether a speedy trial violation of constitutional magnitude has occurred. *Barker,* 407 U.S. at 530. The test assesses the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (footnote omitted). Even assuming the length of pre-trial delay in the instant case was sufficient to trigger a potential Sixth Amendment violation analysis, the remaining three *Barker* factors undermine Bennett's claim. But for the initial short period delay requested by the Government, the rest of delay falls squarely on Bennett. Bennett bears primary responsibility for the delay. Bennett should not now be able to prevail on a Sixth Amendment claim.

The third *Barker* factor similarly undermines Bennett's claim. At no point during the proceedings did he assert his right to a speedy trial. In fact, Bennett filed

a written waiver. "[F]ailure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Barker*, 407 U.S. at 531 n. 31. This factor weighs heavily against Bennett.

Finally, Bennett has shown no meaningful prejudice from the delay. *See id.* at 532. The plea agreement he entered in this matter was substantially similar to the agreement contemplated when he first was represented by Mr. Branom, (Doc. 27), and the agreement he actually entered when represented by Mr. Stephens. (Doc. 77.) The length of delay involved in this matter does not suggest the Court should presume prejudice. Bennett also has failed to show that his defense suffered prejudice by having witnesses become unavailable or being unable to recall matters. Bennett has not argued that his pretrial incarceration was oppressive. This factor, too, weighs against Bennett.

On balance, none of the factors weigh in favor of Bennett, much less heavily in his favor. Bennett's failure to assert his speedy trial rights alone proves determinative. Bennett cannot establish that a Sixth Amendment speedy trial violation occurred. Ms. Holton cannot be deemed to have performed deficiently for failing to raise a constitutional speedy trial claim in the absence of a Sixth Amendment violation. Bennett's speedy trial arguments lack merit and afford no basis for relief.

### iii.  Judicial bias

Finally, Bennett claims that this Court exhibited bias that prevented him from receiving his right to a fair and speedy trial with competent representation. (Doc. 231-1 at 12.) Bennett's argument conflicts with the facts of this case. The Court provided Bennett with four highly competent court-appointed counsel. The following exchange took place when Bennett sought removal of his third counsel, Mr. Stephens:

| | |
|---|---|
| The Court: | All right. Well, Mr. Bennett, I am going to grant your wish. I'm going to grant Mr. Stephens's motion to withdraw as your counsel.  You get one more, and that's the end of the line here. You can make your case to your new counsel, and that counsel can advise you.  You can decide if you're going to withdraw your guilty plea or whether you are going to go to trial, but this case is going to be finished soon. |
| Bennett: | Yes. |

(Doc. 124 at 19:21-25 to 20:1-4.)

The U.S. Supreme Court has observed that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). To the extent Bennett believes that the Court erred by granting counsel's motions to withdraw or Bennett's own requests for a new counsel, without more prove insufficient to support a claim of judicial bias.

Bennett also seems to take issue with the Court referring to Doe as a "victim," although he does not refer to a specific proceeding or ruling in which this occurred. Bennett asserts that the statement represents bias and prejudice by the

Court because he was not convicted of a crime involving Doe. (Doc. 231-1 at 12.) The Court would note that Count I of the Indictment referred to Doe. (*See* Doc. 1 at 1.) The reference in the charging document alleges that Doe was Bennett's victim. Regardless of semantics, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555. Similarly, judicial remarks made during the course of proceedings that "are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* A trial judge's "ordinary efforts at courtroom administration . . . remain immune."

Bennett has failed to demonstrate that any reference to Doe as a victim proved improper or constituted bias. Nothing in the record suggests the Court held a "deep-seated favoritism or antagonism" toward Bennett that would have made fair judgment impossible. The Court provided Bennett with multiple counsel and allowed him to withdraw his guilty plea. Bennett ultimately decided to plead guilty rather than proceed to trial while represented by counsel without intervention by the Court. No judicial bias exists, particularly that which would have impacted Bennett's right to a fair and speedy trial. This claim also lacks merit and will be

denied.

### F. Actual Innocence

Bennett claims that missing evidence, if discovered, and then "proven and viewed in light of the evidence as a whole" would be sufficient to establish by clear and convincing evidence that no jury would have found him guilty of the offense. (Doc. 213-1 at 16.) Bennett alleges that this evidence includes the fact that authorities concealed evidence that Doe's mother had a history of making false allegations. (*Id.*) Bennett claims he can show his "actual legal innocence." (*Id.*)

Neither the U. S. Supreme Court nor the Ninth Circuit has resolved whether a freestanding claim of actual innocence is cognizable on collateral review. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Jones v. Taylor*, 763 F. 3d 1242, 1246 (9th Cir. 2014). The U.S. Supreme Court assumed without deciding In *Herrera v. Collins*, 506 U.S. 360, 417 (1993), that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional." *Herrera* indicated that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.* In summarizing the standard applicable to a freestanding claim of actual innocence, assuming such a claim is cognizable, the Ninth Circuit reiterated that "[t]he standard for establishing a freestanding claim of actual innocence is extraordinarily high" and the showing "would have to be truly persuasive." *Jones*,

38

763 F.3d at 1246. "At a minimum, the petitioner must go beyond demonstrating

doubt about his guilt, and affirmatively must prove that he is probably innocent."

*Id*. (internal citation omitted).

The U.S. Supreme Court has defined the standard for a freestanding actual

innocence claim by reference to the lower standard for a gateway claim of actual

innocence under *Schlup v. Delo*, 513 U.S. 298 (1995). The U.S. Supreme Court

held in *Schlup* that a petitioner who otherwise would be procedurally barred from

presenting a constitutional claim may obtain review of the claim by demonstrating

actual innocence. *Schlup*, 513 U.S. at 314-15. "In order to pass through the *Schlup*

actual innocence gateway, a petitioner must demonstrate that in light of new

evidence, it is more likely than not that no reasonable juror would have found the

petitioner guilty beyond a reasonable doubt. *Jones*, 763 F.3d at 1247 (internal

citation omitted). The new evidence must be reliable, and the reviewing court must

consider all evidence (new and old) to "make a probabilistic determination about

what reasonable properly instructed jurors would do" based on the total record. *Id*.

The U.S. Supreme Court held in *House v. Bell*, 547 U.S. 518, 555 (2006),

that a freestanding innocence claim "requires more convincing proof of innocence

than *Schlup*." Although the petitioner in House had "cast considerable doubt on his

guilt- doubt sufficient to satisfy *Schlup's* gateway standard for obtaining federal

review despite a state procedural default," he had failed to meet the standard for a

freestanding actual innocence claim. *House*, 547 U.S. at 554-55.

Applying these standards, Bennett's freestanding actual innocence claim fails. Bennett does not base his claim upon newly discovered evidence. He again suggests there is missing evidence and guesses what it might show. The evidence surrounding Doe's mother and her shifting stories was presented, in some fashion, to the Court relative to the *Franks* hearing. It does not constitute newly discovered evidence. Bennett knew the entire time of Doe's mother's varying accounts given in the dissolution proceedings, the order of protection hearing, and the state criminal trial. This evidence falls short of meeting the *Schlup* standard.

Perhaps even more problematic, Bennett does not dispute the validity of his underlying plea-based conviction for receipt of child pornography. Any claim of actual innocence conflicts with his guilty plea, which is entitled to a strong presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.") Bennett cannot meet the requirements of *House* and *Jones* to establish a freestanding actual innocence claim. The "evidence" Bennett proposes does not cast doubt on his guilty plea and conviction, let alone demonstrate he is actually innocent of receipt of child pornography. This claim also fails.

Case 4:17-cr-00068-BMM   Document 235   Filed 12/05/22   Page 41 of 42

## V.     Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253( c)(1)(B). "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253( c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under this standard, the Court concludes that Bennett is not entitled to a certificate of appealability. No reasonable jurist would find debatable Bennett's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

## VI.   ORDER

Accordingly, IT IS ORDERED:

1.  Bennett's Motion to Appoint Counsel (Doc. 234) is DENIED.

2.  Bennett's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 231) is DENIED.

3.  A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Bennett files a Notice of Appeal.

4.  The clerk shall ensure that all pending motions in this case and in CV 22-22-GF-BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against Bennett.

DATED this 5th day of December, 2022.


_____
Brian Morris, Chief District Judge
United States District Court